**Annetta S. NORWOOD, Individually and as Independent Executrix of the Estate of James S. Norwood, Deceased, and James Byron Norwood, Appellants,**

v.

**Robert J. PIRO and Piro & Lilly, P.C., Appellees.**

No. 06–93–00046–CV.

Court of Appeals of Texas, Texarkana.

Oct. 18, 1994.

Constance Y. Singleton, Morgan & Singleton, Houston, for appellants.

John B. Wallace, Giessel, Stone, Barker, Lyman, Houston, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

This is a legal malpractice case in which Annetta S. Norwood, individually and as independent executrix of the estate of James S. Norwood, deceased, and James Byron Norwood (the Norwoods), appeal from a summary judgment in favor of Robert J. Piro and his law firm, Piro & Lilly, P.C. (Piro).

 The Norwoods' pleadings raised claims of negligence, DTPA violations, breach of the duty of good faith and fair dealing, fraud, tortious interference with inheritance, and fraudulent concealment. Piro moved for summary judgment solely on the basis of the statute of limitations. The trial court granted the motion.

In a summary judgment case, the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). When, as in the present case, a defendant moves for summary judgment based on an affirmative defense, the defendant has the burden to prove conclusively all elements of the affirmative defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In summary judgment cases, the burden is on the movant to negate the discovery rule exception. *Krueger v. Gol*, 787 S.W.2d 138 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *see also Burns v. Thomas*, 786 S.W.2d 266 (Tex.1990).

 Legal malpractice actions are governed by a two-year statute of limitations, running from the date the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). Deter-mination of the date of accrual is a judicial function. *Willis*, 760 S.W.2d at 644.

In 1983, the Norwoods retained Piro to represent them in a probate suit demanding an accounting by Moya Norwood, widow of the decedent and stepmother of the Norwoods, as to the assets of the estate of James S. Norwood, deceased. Moya Norwood died while the suit was pending. Final judgment was entered in the suit on October 11, 1985. The executors of Moya's estate appealed. The Fourteenth Court of Appeals affirmed the judgment, and the Texas Supreme Court denied writ on March 7, 1987.

The distribution schedules for the assets of the estate of James S. Norwood, which were attached to the trial court's judgment of October 11, 1985, were prepared by Piro. Schedule A provided in relevant part that the sum of $33,435.80 was due from the estate of Moya Norwood to the Norwoods. Schedule B provided in relevant part that an identical amount was due to the estate of Moya Norwood from the Norwoods. This had the effect of a zero net amount expended or received with regard to this sum of money. The estate of Moya Norwood refused to pay the amount due to the Norwoods under Schedule A.

On March 3, 1989, the court conducted a hearing on the motions for clarification and considered the disposition of the $33,435.80 (item 14 of Schedule A and item 14 of Schedule B). The court entered an order in which it found that its judgment of October 11, 1985 was not ambiguous with regard to the $33,-435.80. The order also modified the 1985 judgment to provide for a different division of certain property of the James S. Norwood estate.

On February 13, 1990, the trial court entered what it termed the "final judgment" with regard to the estate of James S. Norwood. The judgment indicates that the court considered the final accountings of all parties, and in an exhibit to the judgment the court restated its findings with regard to the accountings. In relevant part, the judgment reflected that the court had once again considered the disposition of the $33,435.80 and that it found the judgment of October 11, 1985, to be unambiguous in that regard.

On July 12, 1990, the Norwoods filed suit against Piro for legal malpractice based on Piro's drafting of the schedules providing for reciprocal payments of the $33,435.80 to the parties. Piro filed a motion for summary judgment on the basis that the statute of limitations precluded the suit.

Piro's summary judgment proof consisted of an affidavit by Douglas Johnston, an attorney who represented the James S. Norwood estate and independent executrix Annetta Norwood from late 1966 until March 1989; copies of the Norwoods' original and second amended petitions; a copy of a letter dated October 14, 1987, from Eugene Pitman, attorney for the estate of Moya Norwood, deceased, to attorney Douglas Johnston in which Pitman mentioned the sum of $33,-435.80 due from Moya Norwood's estate; and a copy of a letter dated December 9, 1987, from Jim (James) Norwood to attorney Douglas Johnston in which he remarked that no mention had been made in a proposed court order of the hearing to resolve the error made by attorney Piro in the final judgment (the letter indicates that a copy of the letter was sent to Annetta Norwood).

In his affidavit, Johnston states that attorney Pitman became aware of the offsetting award of $33,435.80 between the parties and that Pitman mentioned it in his letter of October 14, 1987, to attorney Johnston; that at a hearing on October 29, 1987, the trial court considered, among other things, the matter of the reciprocal awards of $33,435.80; and that Annetta Norwood was present at that hearing (and thus was aware in 1987 of the alleged error by Piro regarding the award of the subject sum of money).

In their response, the Norwoods state that Moya Norwood's estate was the party appealing in the case in which the court entered judgment on October 11, 1985; that the Norwoods' counsel, Piro, did not cross-appeal nor raise in the appellate court the matter of the alleged error regarding the reciprocal awards of $33,435.80; that after the final judgment in the Texas Supreme Court on March 7, 1987, motions were filed by both sides seeking assistance in aid of enforcement of the judgment; that the trial court resolved the motions in favor of the Moya Norwood estate by holding that there was no ambiguity regarding the awards of $33,435.80 on the property disposition schedules; and that on February 13, 1990, the court entered a judgment disposing of all matters in the estate and again holding that the disposition of the $33,435.80 matter in its earlier judgment was not ambiguous.

The Norwoods attached the affidavit of Richard D. Johnston, a certified public accountant, who stated that he attended an in-chambers meeting with the trial judge and others on October 29, 1987 (described by Piro's affidavit as a hearing); that, contrary to Piro's contention, Annetta Norwood did not attend the meeting; that Piro, who did attend, admitted that he had made the hand-written change to Schedule B contained in the 1985 judgment that caused it to read that $33,435.80 would be due to be received by the Moya Norwood estate from the Norwoods, while Schedule A required that the same sum was to be received by the Norwoods from the Moya Norwood estate; and that Piro had stated at the meeting that he would make the estate whole if his error caused economic loss.

■ When an attorney is alleged to have committed malpractice during the representation of a matter in litigation, the statute of limitations on the resulting malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted and the claim becomes final. This is because the viability of the malpractice cause of action depends on the outcome of the initial litigation. *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 156 (Tex.1991). Put another way, there is no legal injury until the underlying suit becomes final. The statute of limitations commences to run from the time of the legal injury, not the time of a negligent act. *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967). In the present case, Norwood could show no injury if the matter were going to be corrected by the probate court.

■ Generally, after the last appeal, the underlying case becomes final; however, this was a probate proceeding and the matter in question was not brought up on appeal. The

summary judgment proof shows that even after a portion of the probate proceeding had been appealed, the matter involving the $33,430.80 was still being considered by the probate court, and it was not until February 13, 1990, that the trial court entered a judgment finally disposing of this matter. The two-year statute of limitations had not run from that date of finality until suit was brought by the Norwoods on July 12, 1990.

 It is not the occurrence of the negligent act or omission that starts the limitations period to run in a legal malpractice case, but in addition to the rule that the underlying litigation must be final, the period begins to run when the claimant discovered—or through the exercise of reasonable care and diligence should have discovered—the facts establishing the elements of the cause of action. *Willis*, 760 S.W.2d 642. One of the essential elements of a cause of action is injury.

Piro contends that the limitations started running when the Supreme Court denied writ of error in the case, and that the probate court had no further jurisdiction over the matter. Thus, he contends any proceeding pending in the probate court would not toll the statute of limitations. Apparently, the probate court believed that it still had jurisdiction of matters involving the estate inasmuch as it modified the previous order on March 3, 1989, and entered a final judgment on February 13, 1990, specifically addressing the claim in issue.

Also, letters from an attorney researching the matter and from Piro himself indicate that they believed the matter was not final. Attached to the Norwoods' summary judgment proof is a letter from an attorney, Douglas S. Johnston, to Piro stating that he had researched the matter concerning the $33,435.80 item. He states in his letter:

> There remains a question as to whether the orders signed by the court on March 3, 1989 are final for purposes of appeal. Our motion raised the question of accounting for rental income. I do not believe that the court had disposed of that issue. Assuming that the Norwoods proceed with the filing of an accounting, I would anticipate that the court will resolve the accounting issues at some point in the future. Thus, I think it likely that a reviewing court would hold that orders of March 3rd were not final for purposes of appeal. Nonetheless, prudence may dictate that an attempt to perfect the appeal be made.

In a letter dated February 23, 1989, to Annetta Norwood, Piro stated the following:

> So far as I know, no judgment order or decree has finally established any loss to the estate. Furthermore, I have asked Doug [Douglas Johnston] to advise me when such a document is presented to the Court for entry so that I might be present and address the Court. Lastly, even if such a document is signed by the Court, appellate procedures are available that could result in an appropriate correction. Surely given these circumstances you cannot reasonably expect a check from my firm as requested. Nor could you reasonably expect that I would not turn such a matter over to my insurance company to which I have been paying premiums for years without a single claim.

There was summary judgment proof that the underlying litigation was not final until February 13, 1990. If so, the statute of limitations had not run. If the judgment were final on the date the Supreme Court denied writ on March 7, 1987, there was summary judgment proof that Piro fraudulently concealed this fact from his clients. If so, this concealment could have tolled the running of the statute of limitations.

 The Norwoods have pleaded fraudulent concealment by Piro. In *Willis*, the Texas Supreme Court held that the discovery rule is applicable to legal malpractice cases, but the Court said that an attorney as a fiduciary is obligated to render full and fair disclosure of the facts material to the client's representation, because the client must feel free to rely on the attorney's advice. 760 S.W.2d 642. Facts which might ordinarily require investigation likely may not excite suspicion when a fiduciary relationship is involved. *Id.* at 645. The Court in the *Willis* case recognized the layman's inability to detect legal malpractice and held that the statute of limitations does not run until the

claimant discovers or should have discovered through the exercise of reasonable case and diligence the facts establishing the elements of the cause of action. *Id.* at 646. Fraudulent concealment of material facts underlying a cause of action by the defendant may toll or suspend the operation of the statute of limitations. *Id.* at 647.

In the present case, the Norwoods contend that Piro concealed the fact that his alleged error was final and could not be corrected by the probate court. There is the fact question as to whether the Norwoods relied on their attorney's assurances and therefore did not discover and, through the exercise of reasonable care and diligence, could not have discovered all of the elements of their cause of action. To hold as a matter of law that the client could not rely on her lawyer's statements would diminish the attorney-client relationship. Moreover, it would require the diligent client to hire a second lawyer to second guess the actions of the first at every difficulty. *See Medical Protective Co. v. Groce,* 814 S.W.2d 124, 129 (Tex.App.—Corpus Christi 1991, writ denied).

When summary judgment is sought on the basis that the statute of limitations has run, the movant must conclusively establish the bar of limitations. *Shead v. Grissett,* 566 S.W.2d 318 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ dism'd). We find that the summary judgment proof does not show as a matter of law the statute of limitations has run against the Norwoods. The trial court erred in granting the motion for summary judgment.

The judgment of the trial court is reversed, and this cause is remanded to the trial court for a trial on the merits.