David CANNON, John Cannon, Delanore Lee Cannon and Rose Ann Hooper Cannon, Appellants,

v.

TEXAS INDEPENDENT BANK, Appellee.

No. 06–98–00175–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 26, 1999.

Decided Aug. 5, 1999.

Rehearing Overruled Sept. 21, 1999.

Michael E. Robinson, The Robinson Law Firm, Dallas, for appellant.

Alan Scott Trust, Trust Law Firm, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

# O P I N I O N

Opinion by Chief Justice CORNELIUS.

Texas Independent Bank ("TIB") sued David Cannon, John Cannon, Delanore Lee Cannon, and Rose Ann Hooper Cannon to foreclose a vendor's lien on a house. The trial court granted TIB's motion for partial summary judgment declaring that the note on which TIB sued remained unpaid and secured by a valid vendor's lien and deed of trust. After a trial on the remaining issues, the trial court rendered judgment for TIB. The Cannons appeal from the trial court's judgment awarding TIB recovery on the note and for interest, taxes, insurance and inspection fees, and attorney's fees. In addition, the trial court's final judgment found that TIB was the present owner and holder of the note and the deed of trust, the note remains outstanding and unsatisfied, and the lien granted under the deed of trust remains valid and unsatisfied.

## FACTUAL BACKGROUND

On October 21, 1983, R. Ritzenhaler, Inc. executed a warranty deed with vendor's lien conveying title to a home and lot located at 3913 Salem Court, Plano, Texas, to Delanore Lee Cannon, Rose Ann Hooper, and David and John Cannon.[1] The deed retained an express vendor's lien, and the purchase money note for $160,650.00 was also secured by a deed of trust note and a contractual deed of trust. The purchase money note was payable to the order of Northpark National Bank. The deed expressly provides that Northpark is subrogated to all of the rights, title, liens, and equities of the grantor securing the payment of the note, and it is agreed that the vendor's lien is retained against the property until the note and all interest are fully paid.

The deed of trust note was payable in one year, with interest beginning at twelve percent but fluctuating at one percent in excess of Northpark Bank's prime rate. The deed of trust note also expressly provided that the makers, sureties, and endorsers of the note agreed that the note could be extended for any period or periods of time, and that partial payment before or after maturity could be made without prejudice to the holder.

The deed of trust was signed by Delanore and Rose Cannon on October 21, 1983, to Henri Bromberg, Jr., trustee for the benefit of Northpark Bank. The deed of trust additionally secured the obligations under the deed of trust note along with all renewals and extensions.

Only Delanore and Rose Cannon executed the warranty deed, the vendor's lien, the deed of trust, and the deed of trust note. John and David Cannon were

---

1. At the time of the warranty deed, Delanore Cannon and Rose Ann Hooper were engaged. Rose Ann Hooper is now known as Rose Ann Hooper Cannon. David and John Cannon are the sons of Delanore Cannon.

named as grantees in the deed, but neither one signed any document concerning the property transaction. John Cannon was a minor on October 21, 1983.

Between 1984 and 1992, Delanore and Rose Cannon made several extensions and renewals of the original purchase money indebtedness, all of which altered the interest rate and terms of payment. At some point before 1990, Willow Bend National Bank acquired the Northpark deed of trust note. In October of 1992, Delanore and Rose Cannon signed a loan modification agreement with the Federal Deposit Insurance Corporation ("FDIC"), as liquidator of the failed Willow Bend National Bank. The loan modification agreement, which referenced the October 21, 1983 warranty deed, deed of trust, and the deed of trust note, extended the loan for a term of fifteen years and fixed the interest rate. At the time this agreement was signed, $130,000.00 remained unpaid on the original deed of trust note.

The FDIC then transferred the note and the modification agreement to TIB. TIB later sold the note to the Federal National Mortgage Association ("Fannie Mae") and endorsed it in blank. TIB was the servicing agent of the note for Fannie Mae. In May of 1996, TIB informed Delanore and Rose Cannon that because the note was in default, the indebtedness was accelerated. The Bank then proceeded with a foreclosure sale under the deed of trust.

Delanore and Rose Cannon filed a petition in the United States Bankruptcy Court sitting in Plano, Texas, to stop the foreclosure proceeding. TIB moved to lift the stay in the bankruptcy proceeding, but Delanore and Rose Cannon then filed an adversarial proceeding in the bankruptcy court against TIB to determine the validity and enforceability of the deed of trust lien claimed by TIB. David and John Cannon were not parties to the litigation.

In the bankruptcy suit, Delanore and Rose Cannon contended that TIB's lien was invalid and unenforceable. They contended that the October 21, 1983 North-

park deed of trust note was paid in full on January 15, 1989, when they signed a new deed of trust note for $122,000.00. They asserted that the vendor's lien on the 1983 deed of trust note was void once they paid the 1983 deed of trust note with the 1989 deed of trust note. They also contended that the deed of trust securing the 1983 note was released on signing the deed of trust note in 1989, and that the deed of trust note was invalidated when it was physically destroyed.

The bankruptcy court found that Delanore and Rose Cannon failed to prove their allegations and were not entitled to the relief sought, and that the 1983 deed of trust lien was valid and enforceable.

## PROCEDURAL HISTORY

On August 14, 1997, TIB filed a lawsuit in the 296th District Court against John and David Cannon seeking to foreclose its vendor's lien against the property and declaring its vendor's lien superior to any other interest in the property.

John and David Cannon answered and filed a motion for summary judgment. Their motion contended that their parents, Delanore and Rose Cannon, could not alter or renew a purchase money note and vendor's lien that affected their homestead rights without their consent. They contended that, because the renewals and extensions were without their consent, they were ineffective to extend the note beyond its one year due date, and that since the lawsuit was brought in 1997, the statute of limitations had run on the suit to collect that note or enforce the security. Additionally, they contended that they were not given any truth in lending disclosures required by federal law, and that the 1983 deed of trust note was physically destroyed and replaced by a $122,000.00 note that was unsecured.

The motion for summary judgment was supported by the affidavit of Delanore Cannon. He stated in his affidavit that he went to Willow National Bank to secure a

new loan for $122,000.00 to pay the 1983 deed of trust note and release the vendor's lien and deed of trust. He said he told bank officers that he wanted to eliminate the 1983 deed of trust because it allowed for nonjudicial foreclosure. According to him, Willow Bend Bank drafted a new note releasing the Northpark deed of trust. He said he personally shredded the 1983 deed of trust note after he signed the $122,-000.00 note. TIB objected to Delanore Cannon's affidavit because it contained statements from an interested witness that could not be readily controverted. The trial court sustained TIB's objections.

John and David Cannon also filed a second motion for summary judgment contending that TIB was not the true owner of the note.

TIB amended its petition to include Delanore and Rose Cannon as defendants in the lawsuit. TIB subsequently filed its own motion for partial summary judgment contending that its vendor's lien was superior and that the Cannons were precluded by res judicata and collateral estoppel from attempting to relitigate the validity of the 1983 deed of trust and deed of trust note.

The trial court granted partial summary judgment in favor of TIB and denied the Cannons' motions for summary judgment. The remaining issues were tried, and the trial court rendered judgment for TIB.

### Analysis

In their first two points of error, the Cannons contend that their homestead rights in the property are not subject to the vendor's lien and deed of trust. Specifically, they assert that they never signed any document regarding the deed, the deed of trust, the deed of trust note, or any renewals or extensions of the purchase money note. They argue that to attach a lien against their homestead rights TIB must have secured their joinder or consent to the renewals and extensions of the notes. If the note was not validly renewed, limitations ran against recovery of

the original note or foreclosure before TIB's suit was filed. Because they never signed any renewal or extension, they assert that the only vendor's lien TIB could enforce is the vendor's lien in the 1983 deed of trust note. They contend that since the 1983 deed of trust note was a one year note, TIB had to bring suit on it within four years of its due date, or limitations would bar its enforcement.

■ To support their contention, the Cannons cite the Texas Commission of Appeals case of *Uvalde Rock Asphalt Co. v. Hightower*, 140 Tex. 200, 166 S.W.2d 681 (1942). In that case, the court held that a husband alone could not renew a mechanic's lien and deed of trust securing it that was created jointly by the husband and wife after their homestead rights had attached to the property. *Id.* at 683. The Cannons contend that the court's holding in *Uvalde* can be applied to the facts here because the deed of trust note was renewed several times without John or David Cannon's consent or joinder.

We reject this contention. First, *Uvalde* does not apply to purchase money liens. Several cases decided after *Uvalde* make it clear that the decision there does not apply to vendor's liens, but only to mechanic's liens. *Brown v. Federal Land Bank of Houston*, 180 S.W.2d 647, 652 (Tex.Civ.App.-Fort Worth 1944, writ ref'd w.o.m.); *Mikulenka v. Mikulenka*, 168 S.W.2d 517, 519 (Tex.Civ.App.-Austin 1943, no writ). Even if the *Uvalde* decision applied to purchase money liens, the decision in that case would be inapposite here because both Delanore and Rose Cannon, husband and wife, and the only signatories to the original note, signed the extensions and renewals. The Cannons have cited us to no authority holding that the children, who are grantees in the deed but who did not sign the note, must also sign the renewals and extensions of the purchase money note to retain its superiority.

TIB held an express vendor's lien, coupled with a deed of trust on the property

in question. Where an express vendor's lien is retained to secure unpaid purchase money, the vendor retains the superior title, and the vendee has a mere equitable right to acquire title by carrying out the agreement. *Walton v. First Nat'l Bank of Trenton*, 956 S.W.2d 647, 651 (Tex.App.-Texarkana 1997, pet. denied). Delanore and Rose Cannon borrowed money for the purchase of their home. The Cannons cannot defeat TIB's superior lien on the property merely because Delanore and Rose Cannon extended and renewed the purchase money lien without the consent of David and John Cannon.

■ Moreover, TIB's suit is not barred by the statute of limitations. Section 16.036 of the Texas Civil Practice and Remedies Code provides that a party *primarily liable for a debt or obligation* secured by a real property lien may suspend the running of the four year limitations period for real property liens by a written extension agreement. TEX. CIV. PRAC. & REM.CODE ANN. § 16.036 (Vernon Supp. 1999). The limitations period is suspended and the lien remains in effect for four years after the extended maturity date if signed and filed of record in the county clerk's office. *Id.* The 1992 loan modification agreement was signed by Delanore and Rose Cannon, who were primarily liable on the original debt. The agreement, which renewed the 1983 deed of trust note and deed of trust, states that the last installment payment was due November 1, 2007. TIB brought its suit for foreclosure of the vendor's lien in 1997, after the Cannons stopped making payment in 1995. The suit was not barred by limitations.

In their third point, the Cannons contend that the trial court erred in granting the partial summary judgment because TIB was not the owner and holder of the deed of trust note. They make three arguments under this point: (1) the note was physically destroyed by Delanore Cannon in 1989, (2) Fannie Mae never reassigned the note back to TIB, and (3) the trial court improperly relied on the affidavit of

Frances Flinn, an officer of TIB, who stated that TIB was the owner and holder of the note.

In summary judgment cases, the question on appeal is whether the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Shivers v. Texaco Exploration and Prod., Inc.*, 965 S.W.2d 727, 731 (Tex.App.-Texarkana 1998, pet. denied). The movant has the burden in a summary judgment proceeding, and the court must resolve against the movant all doubts as to the existence of a genuine issue of fact. *Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex.1982). The plaintiff, as movant, must conclusively prove his entitlement to prevail on each element of his cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Cadle Co. v. Butler*, 951 S.W.2d 901, 906 (Tex.App.-Corpus Christi 1997, no pet.). A summary judgment can be granted for a movant even if the movant fails to produce summary judgment evidence in support of the motion, if the motion is based on a point of law with undisputed facts. *Segrest v. Segrest*, 649 S.W.2d 610, 611 (Tex. 1983). If the movant does not meet its burden of proof, there is no burden on the nonmovant. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). But if the movant establishes a right to summary judgment, the burden shifts to the nonmovant. *Stevens v. State Farm Fire and Cas. Co.*, 929 S.W.2d 665, 669 (Tex.App.-Texarkana 1996, writ denied). The nonmovant must then respond to the summary judgment motion and present to the trial court summary judgment evidence raising a fact issue that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 678.

■ When both parties move for summary judgment, we can review both orders, the one that granted the motion for

summary judgment as well as the one that denied the motion for summary judgment. *Holstein v. Federal Debt Management, Inc.*, 902 S.W.2d 31, 35 (Tex.App.Houston [1st Dist.] 1995, no writ). Each party has the burden to clearly prove its right to judgment as a matter of law, and neither may prevail simply because the other failed to discharge its burden. *Id.* Because both parties moved for summary judgment, we consider all the evidence on both motions. *Id.*

■ The Cannons contend that TIB is not the owner and holder of the 1983 note and the 1992 loan modification of that note, because the 1983 note was physically destroyed by Delanore Cannon in 1989 when he signed a new deed of trust note for $122,000.00. They contend that the affidavits of Delanore Cannon, Jack Harvard, and Rose Cannon establish a genuine issue of material fact whether the 1983 deed of trust note, the vendor's lien, and the 1983 deed of trust were extinguished in 1989.

■ This contention is barred by collateral estoppel. Collateral estoppel prohibits the relitigation of particular issues already resolved in a prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992); *Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d 24, 27 (Tex.App.—Houston [14th Dist.] 1996, writ denied). To invoke the doctrine of collateral estoppel, a party must establish "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d at 27. Moreover, although mutuality is no longer required between the parties, the party against whom collateral estoppel is asserted must have been a party or in privity with a party in the prior litigation. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990); *Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d at 27.

■ On September 16, 1996, Delanore and Rose Cannon filed an adversarial lawsuit in their bankruptcy proceeding to determine the priority of the liens on the property. As noted above, they made the same contentions in the bankruptcy proceeding as they did before the trial court and as they do now before this Court. The bankruptcy court ruled that Delanore and Rose Cannon failed to prove the allegations in their complaint and that they were not entitled to the relief sought. The bankruptcy court also ruled that TIB has a valid and subsisting lien upon the property by virtue of the 1983 deed of trust. Although John and David Cannon were not parties to the suit in bankruptcy court, they are in privity with Delanore and Rose Cannon, and are collaterally estopped to raise these issues. Privity includes those who in law are so connected with a party to the judgment and have such an identity of interest that the party to the judgment represented the same legal right. *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794 (Tex.1992); *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668 (Tex. App.—Houston [1st Dist.] 1993, no writ).

Additionally, we find that the summary judgment evidence conclusively negated the contention that the 1983 note was extinguished in 1989. The summary judgment evidence conclusively shows that the original note was successively renewed and extended.

■ The Cannons also contend that TIB failed to produce competent summary judgment evidence that it was the owner and holder of the note. Frances Flinn, a vice president of TIB, stated in her affidavit and in deposition testimony that TIB was the current owner and holder of the note. After the attempted foreclosure sale by TIB as servicing agent for the note, Fannie Mae required TIB to repurchase the note, which TIB did in June of 1997. Flinn said TIB endorsed the note to Fannie Mae in blank. When Fannie Mae sold the note back to TIB, Fannie Mae did not endorse the note. Because of TIB's blank

endorsement of the note to Fannie Mae, Flinn stated that Fannie Mae was not required to endorse the note back to TIB.

The Cannons argue that Flinn's affidavit and deposition testimony constitute a legal conclusion and are based on her opinion. An affidavit does not constitute competent summary judgment proof if it is conclusory or based on opinion. *Duncan v. Lisenby,* 912 S.W.2d 857, 859 (Tex. App.—Houston [14th Dist.] 1995, no writ); *see, e.g., Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex.1994). We find Flinn's statements concerning execution and delivery of the note, a copy of which was attached to and incorporated in the affidavit, and concerning TIB being the holder and owner of the documents, are statements of fact and not mere expressions of opinion. *See Hanks v. NCNB Texas Nat'l Bank,* 815 S.W.2d 763, 765 (Tex.App.-Eastland 1991, no writ). The statements also are not conclusory and can support summary judgment. *See id.* The Cannons did not respond to TIB's motion for summary judgment and did not produce any competent summary judgment evidence that TIB was not the owner and holder of the note. They must, therefore, depend entirely on the legal sufficiency argument that TIB's summary judgment evidence was not competent. We find, however, that TIB's summary judgment evidence was competent and that the trial court did not err in granting TIB's motion for partial summary judgment.

In their final point of error, the Cannons contend that the trial court erred by not ordering the rescission of the loan agreement because TIB or its predecessors failed to provide truth in lending disclosures required by federal law. After TIB filed the present lawsuit seeking foreclosure on the vendor's lien, John and David Cannon filed a counterclaim contending that they had a cause of action under the federal Truth in Lending Act, 15 U.S.C.A. § 1601 et seq. (West 1998), and the regulations under it, 12 C.F.R. § 226 (1999) ("Regulation Z"). They also filed a motion for summary judgment on their cause of action for violation of the Truth in Lending Act. They attached to this motion their own affidavits stating that no truth in lending or Regulation Z disclosures were ever made to them. The trial court denied their motion for summary judgment and granted TIB's motion for partial summary judgment.

In their brief, the Cannons contend that the failure to make certain disclosures allows them the right of rescission. They assert that their rescission claim is brought in the nature of recoupment arising out of the same transaction as the underlying loan. Recoupment is a "right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." BLACK'S LAW DICTIONARY 1275 (6th ed.1990).

Although 15 U.S.C.A. § 1635(f) (West 1998) provides that an obligor's right of rescission shall expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first, the Cannons contend that Texas courts have concluded that a recoupment counterclaim is not barred by limitations. They cite several cases for the proposition that both the Texas and federal courts follow the general rule that recoupment, when pleaded only to defeat a plaintiff's claim, is not barred by the statute of limitations so long as the plaintiff's main action, itself, is timely. *Brown v. U.S. Life Credit Corp.,* 602 S.W.2d 94, 96 (Tex.Civ.App.-Fort Worth 1980, no writ); *Garza v. Allied Finance Co.,* 566 S.W.2d 57, 63 (Tex.Civ.App.-Corpus Christi 1978, no writ). They contend that the defense of recoupment may be asserted even though the same claim asserted as an independent cause of action would be barred by limitations. *Garza v. Allied Finance Co.,* 566 S.W.2d at 63.

**226**

The recent United States Supreme Court case of *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998), has interpreted 15 U.S.C.A. 1635(f) and concluded that the right of rescission completely expires after three years. In that case, a borrower stopped making payments on a mortgage. *Id. at* 523 U.S. 410, 118 S.Ct. at 1410. In the foreclosure proceeding, the borrower acknowledged the default but raised a rescission claim in the nature of recoupment, alleging that the bank failed to make certain disclosures under the Truth in Lending Act. The Court held that Congress' manifest intent permits no federal right to rescind, defensively or otherwise, after the three year period of Section 1635(f) has run. *Id.* at 523 U.S. 410, 118 S.Ct. at 1413.

We conclude that the clear language of the United States Supreme Court abrogates the decisions holding that rescission can be asserted after the three year period. Because the Cannons first asserted a right of rescission on October 8, 1997, they are outside the time period prescribed by 15 U.S.C.A. § 1635(f).

For the reasons stated, we affirm the judgment of the trial court.